**BENSON v. SMITH.**

No. 14537.

Court of Civil Appeals of Texas. Fort Worth.

June 18, 1943.

Rehearing Denied Sept. 17, 1943.

G. F. Dohrn, of Mission, and J. R. Ogle and Smoot & Smoot, all of Wichita Falls, for appellant.

Ralph Mathis and J. R. Wilson, both of Wichita Falls, for appellee.

BROWN, Justice.

On October 22, 1934, J. T. Nelson, now deceased, C. C. Nelson, his brother, and James S. Smith entered into the following partnership contract and agreement:

"Articles of Agreement.

"These articles of agreement made this 22nd day of October, 1934, by and between J. T. Nelson, of Fort Smith, Arkansas, C. C. Nelson and James S. Smith, of Kansas City, Missouri, and L. L. Bain of Iowa Park, Texas.

"Witnesseth:

"That the above named parties have agreed to form an oil and gas company for the purpose of leasing, drilling and producing in the oil fields near Wichita Falls, Texas, or any other territory, and have already taken over the leases described below in the name of James S. Smith, Trustee for all parties to this agreement.

"And these articles of agreement shall hold good and all property carried in the name of James S. Smith, trustee, until it is deemed by the parties hereto to take out a charter and form a company.

"The present leases that have been acquired are described as follows:

"The South half of the M. Powell survey in Wichita County, Texas, consisting of one hundred sixty (160) acres, more or less, and on which there is now 28 shallow wells;

"Also the twenty (20) acres next to and adjoining the above lease and being out of the W. J. Smith survey, Wichita County, Texas;

"Also the Northeast forty (40) acres of the East eighty (80) acres of the North one hundred sixty (160) acres of Block ten (10) of the Palo Pinto School lands of Wichita County, Texas;

"Also the forty (40) acre tract known as the C. Birk fee farm in Block twenty-three (23), Cowherd Brothers survey, Wichita County, Texas.

"It being the purpose and intention of the parties of this agreement to form a corporation whenever agreeable, and to then convey the above described leases, together with any other acquired leases and all personal property to the corporation as and when formed. The said corporation to then operate and develop as it deems necessary.

"The said James S. Smith, trustee, shall have power and authority to purchase needed material and equipment for the operation and development of the above leases; also power and authority to hire or discharge any help as he may deem necessary, it being understood, however, that cash is to be paid for all material, and the said trustee is not to obligate in any way or contract debts for which the parties to this agreement are liable, without the written consent of all parties interested.

"The said J. T. Nelson having advanced Four Thousand Two Hundred Fifty Dollars ($4250.00) in cash, and further agreeing to advance an additional Seventeen Hundred Fifty ($1750.00) Dollars, or a total of Six Thousand ($6000.00) Dollars, which sums will represent and constitute a one-half (½) interest in all the property, both real and personal, herein referred to.

"The said C. C. Nelson and James S. Smith, as trustee, having signed and delivered to J. T. Nelson demand notes of Thirty Seven Hundred Fifty ($3750.00) Dollars and Five Hundred ($500.00) Dollars to secure the said J. T. Nelson until the corporation shall be formed, at which time one-half (½) the stock of the corporation shall be the stock of J. T. Nelson, in lieu of the Six Thousand ($6000.00) Dollars

he has advanced. Any further moneys advanced or loaned to the trustee for the corporation by the said J. T. Nelson shall be acknowledged and accounted for by the note or notes of the said C. C. Nelson and James S. Smith.

"It being further known and agreed that C. C. Nelson shall own one-half (½) of the one-half (½) interest acquired by J. T. Nelson, or one-fourth of the entire organization or corporation, when he has paid to J. T. Nelson one-half (½) of the amount advanced by him.

"The said James S. Smith shall own one-fourth (¼) of the above organization or corporation as compensation for the Twenty-two Hundred Fifty ($2250.00) Dollars in cash which he has advanced and for his other services rendered and to be rendered.

"Said L. L. Bain shall own one-fourth (¼) interest in the organization or corporation for his moneys advanced to date, which include his spudder, drilling rig and certain other material which shall be assigned free and clear of incumbrance to the organization or corporation whenever formed.

"And the said L. L. Bain shall receive a salary of $100.00 per month, from and after November 1st, 1934, when he devotes his entire time to the handling of the properties herein referred to.

"From any moneys received and derived as profit first shall be paid to J. T. Nelson, until the entire sum or sums advanced by him shall have been returned to him in full, with six (6%) per cent interest, it being understood and agreed that the said J. T. Nelson is obligated to advance a total of Six Thousand ($6000.00) Dollars, he having already advanced the sum of Four Thousand Two Hundred Fifty ($4250.00) Dollars, leaving Seventeen Hundred Fifty ($1750.00) Dollars to be advanced when needed; and the amount so advanced by J. T. Nelson shall be refunded to him with six (6%) per cent interest out of the first profits made from operations, sales or otherwise, pertaining to this deal.

"After said J. T. Nelson shall have been paid in full, the next profits shall be paid to James S. Smith with six (6%) per cent interest until the Twenty Two Hundred Fifty ($2250.00) Dollars has been repaid to him.

"And it being further understood that L. L. Bain shall next be paid the sum of Fifteen Hundred ($1500.00) Dollars with six (6%) per cent interest as full pay for his

drilling rig, drilling tools and tractor and services rendered to November 1st, 1934, said rig now being considered as part of the property of the organization, and is to be transferred to the corporation when formed.

"In Witness Whereof, the parties to this agreement have hereunto subscribed their names this 22nd day of October, 1934.

"J. T. Nelson
"C. C. Nelson
"James S. Smith."

In accordance with said contract, James S. Smith, as trustee, and C. C. Nelson, individually, executed demand notes payable to the order of J. T. Nelson as follows: (1) September 10, 1934, in sum of $3,750, with six per cent interest from date, (2) November 10, 1934, for $1,000, with like interest, (3) January 3, 1935, for $500, with like interest, (4) February 23, 1935, for $500, with like interest, (5) May 3, 1935, for $250, with like interest, (6) June 30, 1935, for $250, with like interest, and (7) October 22, 1934, for $500, with like interest; said seven notes aggregating the principal sum of $6,750.

On December 26, 1940, J. T. Nelson, owner and holder of these notes, brought suit against James S. Smith and R. R. Nelson, who is alleged to have been the administrator of the estate of C. C. Nelson, then deceased, and in the petition alleged that plaintiff agreed to advance to James S. Smith and C. C. Nelson the sum of $6,750, under the above quoted contract, which was made "Exhibit A" to the petition; that the sum so advanced was to be repaid to plaintiff "out of the first monies received and profits earned in such business, and the plaintiff was to have an interest in the business for so advancing such amount; that, by reason thereof, plaintiff acquired an equitable lien upon all of the properties and assets of such business to secure him in the return of such amounts."

It is further alleged that in November, 1936, certain stocks of the par value of $2,250 were delivered to plaintiff to be credited on the monies advanced by him. That plaintiff is informed that the money advanced by him was invested by the defendants in various properties and drilling equipment and that same have been operated for profit and have been sold and reinvested in other property, but that James S. Smith, who is in charge of such property, as trustee, is refusing to account to plaintiff therefor or to deliver to plaintiff any portion of the monies received or the profits derived from such property or the operations and/or sales thereof, which plaintiff alleges to be several thousands of dollars and a sum sufficient to pay to him the amounts owing.

The prayer is for an accounting, for an auditor to make an audit of the affairs, and for the fixing of an equitable lien on the properties and a foreclosure of same, and judgment for his debt in the sum of $5,500, with interest.

Suggestion of the death of J. T. Nelson having been made, Lloyd M. Benson, as independent executor of the will of J. T. Nelson, intervened and filed an amended petition relying upon the articles of agreement, quoted above, and alleged: " * * * but that all sums and profits derived from such business and/or sales therein were to be paid to J. T. Nelson until there had been repaid to him the sums so advanced, and 6% interest thereon"; that James S. Smith has sold the properties and received in the sale thereof the sum of $7,000, which he has failed and refused to pay on plaintiff's notes, except the sum of $2,250, and he prays for an accounting of such fund and for judgment against James S. Smith.

Because of inability to obtain service upon the legal representative of C. C. Nelson, deceased, the suit as against the estate of C. C. Nelson was dismissed by the plaintiff.

James S. Smith answered the amended petition by specially excepting to same in that there are no specific allegations raising the issue of what profits, if any, were derived from the properties, either by operations or by sales, and the petition therefore fails to state a cause of action under the contract relied upon.

He next pleaded limitations of four years; and as to the merits pleaded that no profits were derived from the properties either through operations or sales, and that the properties were sold with the consent of J. T. Nelson, and that a complete settlement was made with Nelson, after the sale was made.

The cause was tried to a jury, and two special issues submitted for determination: (1) Whether or not it was the intention of the parties to the contract to repay J. T. Nelson out of either the profits derived from the operation of the oil properties, from the proceeds of any sale of the properties or from any funds derived from any

other source, and the jury answered, "No"; (2) whether or not it was the intention of the parties to repay Nelson solely out of profits derived from the operation of the oil properties, and the jury answered, "Yes".

The intervener-plaintiff objected to the charge on the theory that the rights of the parties were fixed and determined by a contract in writing that is free from ambiguity and calls for an interpretation and enforcement by the court as a matter of law.

Other objections will not be discussed because of the view taken by us in this case.

The trial court rendered judgment that the plaintiff take nothing, and, after his motion for a new trial was overruled, the plaintiff appealed.

We find it unnecessary to discuss the nine points raised in appellant's brief, and simply state that the meat of the appeal is bottomed on the theory that the contract being plain and unambiguous it shows upon its face that J. T. Nelson "was to be paid out of the profits of the operation of the property and out of the proceeds of the sale or otherwise".

We believe that appellant's contention that the contract is plain and unambiguous and should be construed by the court is well taken, but we do not agree with his interpretation of the contract.

Viewing it from its four corners, this contract simply provides that these named parties are forming a partnership "for the purpose of leasing, drilling and producing in the oil fields near Wichita Falls, Texas, or any other territory", and have already taken over certain leases described; that all property shall be carried in the name of James S. Smith, as trustee, until the parties incorporate the business, "whenever agreeable"; that the said Trustee shall have authority to purchase needed material and equipment for the operation and development of the leases, and to hire and discharge "help" he deems necessary, but such Trustee must operate on a cash basis and is prohibited from contracting debts for which the parties to the contract are made liable "without the written consent of all parties interested"; that J. T. Nelson has advanced the sum of $4,250 in cash and has further agreed to advance an additional $1,750, or a total of $6,000, which shall constitute a one-half interest in all of the properties, both real and personal; that C. C. Nelson and the said Trustee have executed and delivered to J. T. Nelson demand notes for $3,750 and $500, respectively, until the corporation shall have been formed, at which time one-half of the capital stock of the corporation shall become the property of J. T. Nelson, in lieu of the $6,000 he has advanced, and any further monies that may be advanced or loaned to the Trustee by J. T. Nelson shall be accounted for by a note or notes signed by the Trustee and C. C. Nelson.

It further provides that C. C. Nelson may acquire one-half of the interest of J. T. Nelson by paying J. T. Nelson one-half of the amount advanced by him; and that James S. Smith shall own a one-fourth interest as compensation for the $2,250 that he has advanced in cash, and for services rendered and to be rendered by him; and that one L. L. Bain shall own a one-fourth interest for his investment therein of a spudder, drilling rig and certain other material to be assigned to the organization free from all encumbrances, and he shall also receive a salary of $100 per month from and after November 1, 1934, when he devotes his entire time to handling the properties of the organization.

This portion of the contract undoubtedly fixes the interests acquired and to be acquired by the four persons named, and the manner in which such interests have been or may be acquired, first in the unincorporated association, or partnership, and second, in the corporation, if the interested parties see fit to incorporate.

Hope is said to spring eternal in the human breast, and well may this be true or men would not enter into business ventures. These persons hoped for and believed that they were engaging in a profitable business, and since J. T. Nelson advanced and contracted to advance the largest sum of money for the venture, when the parties talked over the distribution of profits, they simply provided that "from any moneys received and derived as profit" there should first be paid to J. T. Nelson such amounts as would aggregate the entire sum of money that he advanced, with 6% interest thereon; "and the amount so advanced by J. T. Nelson shall be refunded to him with six (6%) per cent interest out of the first profits made from operations, sales or otherwise, pertaining to this deal".

This provision can mean nothing more than that if and when profits are made from operations, or from sales or otherwise, J. T. Nelson should first be refunded the amount of money he advanced out of such profits. But to clinch the agreement that these advancements were to be repaid only out of actual profits, the next paragraph stipulates that "after said J. T. Nelson shall have been paid in full, the next profits shall be paid to James S. Smith with six (6%) per cent interest until the $2250.00" he advanced "has been repaid to him"; and the next paragraph provides for the repayment next to L. L. Bain of the sum of $1,500 for his rig, tools, tractor and services rendered, and while the word "profits" is not used in such paragraph affecting Bain's right to reimbursement, it is obvious from the entire contract that such was intended.

The construction sought to be placed upon the contract by appellant is not tenable.

It was incumbent upon him to plead and prove that profits were made either from operations, from sales "or otherwise", and this he did not do.

The trial court should have rendered the judgment that was actually rendered, and having done so, we overrule all assignments of error and affirm the judgment of the trial court.